The Honorable Bill Alter State Representative, District 90 State Capitol Building Jefferson City, Missouri 65101
Dear Representative Alter:
This opinion is in response to your question asking:
 In reference to RSMo 571.080, is a person who pawned his handgun required to obtain a "permit to acquire a concealable firearm" from his local sheriff in order to redeem his handgun from said pawnshop?[1]
Section 571.080, RSMo 1994[2], states, in relevant part:
 571.080. Transfer of concealable firearms without permit unlawful — exceptions — antique firearm defined — permit valid for thirty days — violation, penalty. — 1. A person commits the crime of transfer of a concealable firearm[3] without a permit if:
 (1) He buys, leases, borrows, exchanges or otherwise receives any concealable firearm, unless he first obtains and delivers to the person delivering the firearm a valid permit authorizing the acquisition of the firearm; or
 (2) He sells, leases, loans, exchanges, gives away or otherwise delivers any concealable firearm, unless he first demands and receives from the person receiving the firearm a valid permit authorizing such acquisition of the firearm.
* * *
 3. Subsection I of this section shall not apply to the acquisition by or transfer of concealable firearms among manufacturers, wholesalers or retailers of firearms for purposes of commerce; nor shall it apply to antique firearms or replicas thereof . . . .
 4. Transfer of concealable firearms without a permit is a class A misdemeanor.
Relevant sections of the statutory provisions regarding pawnshops and pawnbrokers are as follows:
 367.011. Definitions. — As used in sections 367.011 to 367.060, the following words mean:
* * *
 (3) "Pawnbroker", any person engaged in the business of lending money on the security of pledged goods or engaged in the business of purchasing tangible personal property on condition that it may be redeemed or repurchased by the seller for a fixed price within a fixed period of time;
 (4) "Pawnshop", the location at which or premises in which a pawnbroker regularly conducts business;
* * *
 (6) "Pledged goods", tangible personal property other than choses in action, securities, or printed evidences of indebtedness, which property is deposited with or otherwise actually delivered into the possession of a pawnbroker in the course of his business in connection with a pawn transaction;
 (7) "Secured personal credit loan", every loan of money made in this state, the payment of which is secured by a security interest in tangible personal property which is physically delivered into the hands of the lender at the time of the making of the loan and which is to be retained by the lender while the loan is a subsisting obligation.
 367.031. Receipt for pledged property — contents — loss of, effect. — 1. At the time of making any secured personal credit loan, the lender shall execute and deliver to the borrower a receipt for and describing the tangible personal property subjected to the security interest to secure the payment of the loan. The receipt shall contain the following:
 (1) The name and address of the pawnshop;
 (2) The name and address of the pledgor, the pledgor's description, and the driver's license number; military identification number, identification certificate number, or other official number capable of identifying the pledgor;
(3) The date of the transaction;
 (4) An identification and description of the pledged goods, including serial numbers if reasonably available;
* * *
 (8) The maturity date of the pawn transaction; and
 (9) A statement to the effect that the pledgor is not obligated to redeem the pledged goods, and that the pledged goods may be forfeited to the pawnbroker sixty days after the specified maturity date.
 2. The pawnbroker may be required, in accordance with local ordinances, to furnish local law enforcement authorities with copies of information contained in subdivisions (1) to (4) of subsection I of this section.
* * *
 367.040. Loans due, when — return of collateral, when — restrictions. — 1. Every secured personal credit loan shall be due and payable in lump sum thirty days after the date of the loan contract, or, if extended, thirty days after the date of the last preceding extension of the loan, and if not so paid when due, it shall, on the next day following, be in default. The lender shall retain possession of the tangible personal property subjected to the security interest to secure payment of any secured personal credit loan for a period of sixty days next following the date of default. If, during the period of sixty days, the borrower shall pay to the lender the principal sum of the loan, with the loan fee or fees, and the interest due thereon to the date of payment, the lender shall thereupon deliver possession of the tangible personal property to the borrower. But if the borrower fails, during the period of sixty days, to make payment, then title to the tangible personal property shall, on the day following the expiration of the period of sixty days, pass to the lender, without foreclosure, and the right of redemption by the borrower shall be forever barred.
* * *
 3. Except as otherwise provided by sections 367.011 to 367.060, any person properly identifying himself and presenting a pawn ticket to the pawnbroker shall be presumed to be entitled to redeem the pledged goods described therein.
4. A pawnbroker shall not:
* * *
 (5) Fail to return pledged goods to a pledgor upon payment of the full amount due the pawnbroker on the pawn transaction . . . .; [Emphasis added].
* * *
 367.049. No criminal or civil liability for pawnbroker exercising due care and good faith. — A licensed pawnbroker, or agent or employee of the licensed pawnbroker, who acts, pursuant to the provisions of sections 367.011
to 367.060, in good faith, exercises due care and follows the provisions of the law, shall not be subject to criminal or civil liability for any such act.
 367.050. Violation, penalty. — 1. In addition to any other penalty which may be applicable, any person who is required to be licensed pursuant to section 367.043 who willfully violates any provision of sections 367.011 to 367.060 . . . shall be guilty of a misdemeanor and upon conviction thereof shall be punishable by a fine not in excess of one thousand dollars, . . . .
Under the provisions of Chapter 367, the pawnbroker lends money on the security of pledged goods, a concealable firearm in the situation about which you are concerned. "Secured personal credit loan" is defined in Section 367.011 (7) as the loan of money, the payment of which is secured by a security interest in the tangible personal property [concealable firearm] which is delivered into the hands of the lender and which is to be retained by the lender while the loan is a subsisting obligation.[4] However, under Section 367.040.1, title to the property does not pass to the lender except upon failure of the borrower to make payment to the lender within a specified time period. Section 367.040.1 requires the lender to "deliver possession of the tangible personal property to the borrower" if payment is made within a specified time period. Section 367.040.4 (5) prohibits a pawnbroker from failing to return pledged goods to the pledgor upon payment of the full amount due. A pawnbroker failing to return the concealable firearm after payment of the amount due would be acting contrary to the express requirements of Section 367.040.
In Missouri Attorney General Opinion Letter No. 137, O'Brien, 1964, a copy of which is enclosed, this office opined regarding the concealable firearm permit requirement. There, the county coroner sometimes came into the possession of guns which were the instruments of death of persons. The coroner turned the guns over to relatives of the deceased when the owner of the gun was the deceased person. The concern was whether the coroner should require a gun permit from the recipient. This office opined that a permit was not needed where the gun was transferred to the executor or administrator of the decedent's estate, because that person "does not own such firearm but is a legal trustee and conduit for the purpose of distributing the estate of the decedent." (p. 2). A transfer to a person not the executor or administrator would require a permit, however: (p. 3). The statute requiring a permit at the time of the opinion, Section564.630, RSMo 1959, used the words, "directly or indirectly buy, sell, borrow, loan, give away, trade, barter, deliver or receive," which is similar to the language set forth in Section571.080, RSMo 1994.
In Taylor v. McNeal, 523 S.W.2d 148 (Mo.App. 1975), police officers responding to a disturbance seized two pistols. When the owner later requested the return of the pistols, the police refused, demanding that the owner first obtain permits to acquire a concealable firearm, pursuant to Section 564.630, RSMo 1969. The court held that the statute requiring a permit did not apply in that instance, adding that "[m]ere seizure by the police, which involves only temporary custody, does not change title nor right of possession to the property seized." Id. at 151. The court stated:
 [T]o otherwise construe this statute would produce absurd results which become apparent in the following situations.
 Here the police seized the pistols from [the owner] who peacefully delivered or relinquished possession in his home; yet the officers made no effort to obtain permits from the sheriff nor deliver such permits to [the owner] before the seizure. Similarly, during the course of this proceeding, [the police] delivered the pistols to the sheriff who received them without first acquiring permits from himself as sheriff. If [the owner] had delivered the pistols to his favorite gunsmith for repair, permits from the sheriff would not be contemplated. In such situations, it cannot reasonably be suggested the statute should or was intended to apply.
Id. The court noted that a literal interpretation of the permit-requirement statute would conflict with other statutes, and relied upon the rule of construction that statutes on the same subject matter should be harmonized if possible so that they do not conflict. Id.; accord State ex rel. Lebeau v. Kelly,697 S.W.2d 312, 315 (Mo.App. 1985); Southwest Forest Industries,Inc. v. Loehr Employment Service of Kansas City Inc.,543 S.W.2d 322, 324 (Mo.App. 1976). The court then stated:
 The intention of the legislature must be that the statute does not apply in such cases and the manifest intent of a legislative enactment will prevail over the literal sense of its terms . . . . Construction of statutes should avoid unjust, unreasonable, absurd or confiscatory results.
Taylor v McNeal, 523 S.W.2d at 151-152; accord David Ranken, Jr.Technical Institute v. Boykins, 816 S.W.2d 189, 192 (Mo. banc 1991).
The provisions of Section 571.080, RSMo 1994, should be construed in harmony with the applicable provisions of Chapter 367, RSMo 1994, in determining the answer to your question. Chapter 367 requires a pawnbroker to return the concealable firearm to the borrower after payment of the amount due. Following the reasoning in Taylor v. McNeal, supra, we conclude a person who pawns his concealable firearm is not required by Section 571.080, RSMo 1994, to obtain a permit to acquire a concealable firearm in order to redeem his concealable firearm from the pawnshop. Such conclusion is consistent with Opinion Letter No. 137, O'Brien, 1964.
CONCLUSION
It is the opinion of this office that a person who pawns his concealable firearm is not required by Section 571.080, RSMo 1994, to obtain a permit to acquire a concealable firearm in order to redeem his concealable firearm from the pawnshop.
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General
Enclosure
[1] We assume that the person had obtained a permit to acquire a concealable firearm at the time the firearm was initially acquired such that your question refers to the same person obtaining a second permit at the time of redeeming the firearm from the pawnshop. Furthermore, this opinion does not address any obligations of the pawnbroker to obtain a permit to acquire a concealable firearm upon making the "secured personal credit loan."
[2] This opinion only addresses the applicable Missouri state statutes. It does not address any Federal statutes or regulations that may be applicable.
[3] "Concealable firearm" is defined as "any firearm with a barrel less than sixteen inches in length, measured from the face of the bolt or standing breech." § 571.010 (2), RSMo 1994. "Firearm" is "any weapon that is designed or adapted to expel a projectile by the action of an explosive." § 571.010 (5), RSMo 1994.
[4] We assume the transaction about which you are concerned involves a "secured personal credit loan."